UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Misc. Case No. _____

*In re:*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

DE BEERS LV TRADEMARK LIMITED          )
and DE BEERS LV LIMITED,               )
Plaintiffs,                            )
                                       )
                                       )
v.                                     )
                                       )
DEBEERS DIAMOND SYNDICATE INC.         )
and MARVIN ROSENBLATT,                 )
Defendants.                            )
-----------------------------------------------------------x

**06 MBD 10013**

Case No. 04 CV 4099 (DLC)

MEMORANDUM OF LAW IN SUPPORT OF
EXPEDITED MOTION TO COMPEL RESPONSE TO
THIRD-PARTY SUBPOENA TO BAIN AND COMPANY, INC.

Defendants DeBeers Diamond Syndicate, Inc. and Marvin Rosenblatt (collectively, the

"Defendants"), by and through their attorneys, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo,

P.C. submit this Memorandum of Law in support of their motion pursuant to Fed. R. Civ. P.

45(c)(2)(B) for an order compelling Bain and Company, Inc. ("Bain") to produce unredacted

documents in response to a third-party Subpoena issued on October 6, 2005.

MEMORANDUM OF LAW

Defendants seek the production of documents relevant in this trademark dispute over who

has the right to use the name "DEBEERS" for the sale of diamonds in the United States.  In

response to a subpoena, Bain, a business consulting firm, has produced about 1,700 pages of

responsive documents, but has redacted approximately 60 pages of them based on claims of

attorney-client privilege and attorney work product. Because the documents are relevant and are not protected by any such privileges, they should be produced in unredacted form.

I.     BACKGROUND.

      A.     <u>The New York Litigation.</u>

      Defendants are in the diamond business, selling loose stones under the name DEBEERS DIAMOND SYNDICATE. In 2002, they applied for federal trademark registration of their name for diamonds. Because the name was available, the USPTO approved it for publication.

      Plaintiffs are British entities formed in 2001. They claim that they have the right to use "De Beers" by virtue of a series of licenses and assignments originating with the South African company De Beers Consolidated Mines Ltd. ("DBCM").[1] Plaintiffs have not applied for federal registration of the name in diamonds or jewelry (indeed, we have learned in discovery that they are contractually *prohibited* from doing so and that they were less than forthright with the USPTO on this point). Nevertheless, they opposed Defendants' trademark application, and commenced this action in the Southern District of New York alleging claims of unfair competition and trademark infringement.

      Defendants have asserted a defense of standing, based on Plaintiffs' lack of legal rights to the "De Beers" name in the United States. Besides their contractual prohibition from registering the name, their assignment/license to use the "DE BEERS" mark has been shown in discovery to be illusory under the written documentation. Realizing that this dooms their case, in September 2005, Plaintiffs' 30(b)(6) witness at deposition produced a letter (executed that very morning)

---

[1] Plaintiffs were formed as the result of a joint venture between DBCM and the French luxury goods giant Moët Hennessy Louis Vuitton ("LVMH") for the purpose of creating a new brand which would exploit the "De Beers" name in the retail diamond jewelry market.

purporting to memorialize an "oral license"given four years earlier.  Never before – not in any

correspondence, not in any filings with the Court, not in any filings with the USPTO – had

Plaintiffs stated that their rights to the "DE BEERS" mark for use in diamonds depends upon

recognition of a reverse "oral license" secretly given back in January 2001.

Defendants believe that the failure of DBCM to formally assign these claimed trademark

rights to Plaintiffs was no accident.  It could be that DBCM wanted to avoid U.S. jurisdiction.[2]

Or it could be that DBCM sought to take unfair advantage of its joint venture partner, LVMH, by

granting illusory rights.  Whatever the reason or reasons may be, they are relevant to, and

probative of, Defendants' defense that Plaintiffs lack standing to maintain this action.

     B.     The Bain Subpoena.

Bain is "a global business consulting firm" that helps "make companies more valuable."[3]

In the late 1990's, Bain was hired to analyze DBCM's potential entry into the U.S. retail

diamond jewelry market and to formulate business, marketing and branding plans.

On October 6, 2005, Defendants issued a subpoena to Bain from the District of

Massachusetts[4] (the "Subpoena") calling for the production of documents concerning "De

Beers"[5] and related entities.  *See* Shafritz Decl. at **Exhibit A**.  Bain's attorney, Melissa Nott of

McDermott Will & Emery, contacted Defendants' counsel, asking for a copy of the complaint

---

[2]  Testimony and documents produced thus far indicate that DBCM "could not" or "would not" ever seek to enforce any trademark rights in the U.S.  Indeed, since the 1940's, when the government charged it with antitrust violations, DBCM has avoided U.S. jurisdiction.  *See generally* Declaration of Megan J. Shafritz, Esq., dated January 13, 2006 ("Shafritz Decl."), ¶ 29 and **Exhibits P-R**.

[3]  *See* www.bain.com/bainweb/about/about_overview.asp.

[4]  Bain's principal place of business is in Boston, Massachusetts.

[5]  The Subpoena defined "De Beers" as including Plaintiffs De Beers LV Trademark Ltd. and De Beers LV Ltd., as well as De Beers Consolidated Mines Ltd., De Beers Centenary AG, De Beers Intangibles Ltd, De Beers LV US Limited, De Beers Trademarks Limited, Rapids Trade Mark Limited and Rapids World Limited.

and expressing concern about confidentiality issues. Defendants' counsel agreed to (and did) forward copies of the complaint and the confidentiality order entered in this case.

By letter dated October 19, 2005, Bain objected to the Subpoena as "overly broad and unduly burdensome in that it seeks documents that are irrelevant to a claim or defense of any party" and to the extent it "seeks material protected by the attorney-client privilege and work product doctrine." Nevertheless, Bain agreed to produce documents:

> regarding Bain's consulting work for De Beers as it relates to (i) De
> Beers expansion in to the United States market; (ii) De Beers
> strategy regarding the De Beers LV merger/joint venture; and (iii)
> De Beers' plans to utilize the De Beers name in the United States.

*See* Shafritz Decl. at **Exhibit C**.

On November 11, 2005, Bain made its first production of documents, consisting primarily of PowerPoint slides and other business presentation materials (all of which it designated as "Confidential – Attorneys' Eyes Only" under the protective order). On November 21, 2005, Bain produced a second set of documents, from which it redacted responsive information on the basis of attorney-client privilege and the attorney work product doctrine. In total, Bain produced approximately 1,700 pages, and redacted about 60 pages of them. *See* Shafritz Decl. ¶ 12.

Defendants' counsel conferred with Bain's counsel in an attempt to resolve the redaction issue without the need to burden the Court. Not only were those attempts unsuccessful, but they were made more difficult by Bain's shifting stories as to who was actually asserting the privilege. First, Bain asserted the privilege. Then, Bain indicated that it was Plaintiffs who were asserting the privilege. Then, Bain indicated is was DBCM, and identified its attorneys as Cadwalader. In its most recent correspondence, Bain's counsel has now described that attorney

- 4 -

as representing a Swiss entity related to DBCM, De Beers Centenary AG.[6] *See* Shafritz Decl. ¶¶ 9 through 26.

We will not speculate here as to why the source of the objections appears to have changed over time. We are serving all identified counsel with a courtesy copy of these papers, and we respectfully suggest that they make it crystal clear to the Court who they are, and who they are not, representing. As it stands, it is Bain that was served with the Subpoena, it is Bain that has the documents, and it is Bain that refuses to produce them in unredacted form.

## II.    ARGUMENT.

Bain has objected to the production of the documents in unredacted form on the grounds of relevance, attorney-client privilege and the attorney work product doctrine. As explained below, these objections are unfounded. *First*, the documents are plainly relevant, since they are probative of Plaintiffs' failure to have acquired rights to the "De Beers" name. *Second*, Bain is not a law firm, and was retained by DBCM to render business and marketing advice, not legal advice. Moreover, to the extent that DBCM has chosen to share with Bain any legal advice or legal strategies it is pursuing, DBCM has waived any privilege. *Finally*, Bain's documents were not created because of anticipated and impending litigation, so they are not work product.

Accordingly, in accordance with Fed. R. Civ. P. 45(c)(2)(B), the Court should order that the documents be produced in unredacted form.

### A.    The Bain Documents Are Highly Relevant.

---

[6] Ms. Nott recently wrote to defense counsel to request the return of a Bain document, portions of which are claimed to "contain material over which De Beers Centenary AG asserts attorney-client privilege and work-product protection that should have been redacted prior to production." *See* Shafritz Decl. ¶ 27 and **Exhibit O**. Subsequently, Bain has requested the return of three additional documents that it says likewise should have been redacted. *See id.* ¶ 28. Further, in its correspondence, De Beers demanded the return of *all* of the documents produced by Bain, on the grounds of relevance. *See id.* at **Exhibit K**.

- 5 -

Bain and DBCM have objected to the production of the Bain documents on the grounds of relevance. As stated above, Bain has already produced documents under the Subpoena relevant to the issues in this action. Accordingly, any objection on the grounds of relevance is waived. And, in any event, such an objection is incorrect.

The scope of discovery under a subpoena is "exceedingly broad," and incorporates the provisions of Rule 26(b). *See* 9A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2459 (2d ed.1995). It is well-settled that relevance under Rule 26(b) is construed expansively at the discovery stage, "such that information is discoverable if there is any probability it might be relevant to the subject matter of the action." *Atchison Casting Corp. v. Marsh, Inc.*, 216 F.R.D. 225, 227 (D. Mass. 2003) (denying motion to quash subpoena on grounds of relevance and noting that the "broad scope of the discovery rules reflects a policy that '[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Therefore, "only if it is palpable that the evidence sought can have no possible bearing upon the issues" will a court uphold a relevancy objection to discovery sought by subpoena. *Cash Today of Texas, Inc. v. Greenberg*, No. Civ. A. 02-MC-77, 2002 WL 31414138, *1 (D. Del. Oct. 23, 2002); *see also Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass. 1984) ("[D]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action.").

The Bain documents more than meet this standard, as they are directly relevant to the issues in the trademark action and go to the heart of the claims and defenses. The recognition and understanding of the legal obstacles to using the De Beers name in the United States, the

- 6 -

constraints on DBCM's ability to expand "downstream," and DBCM's decision to carve up the claimed trademarks so as to convey illusory rights to Plaintiffs are all relevant to whether Plaintiffs actually have legal and equitable standing to bring this trademark action. Indeed, they are central to the defense theory that De Beers so scrupulously avoided United States jurisdiction (including during the formation of the joint venture) that, as a result, the company abandoned any U.S. trademark rights it may have once possessed, and has eschewed any equitable rights that it could now be granted.

As articulated by Bain itself, the documents address (i) De Beers' expansion into the United States market; (ii) De Beers' strategy regarding the De Beers LV merger/joint venture; and (iii) De Beers' plans to utilize the De Beers name in the United States. The documents sought by Defendants also relate to other key topics such as brand conflict, the division of rights between De Beers and the joint venture, De Beers' prior use of the De Beers name in connection with any product or service, De Beers' future intent to use the De Beers name in connection with various goods in the United States, and De Beers' target customers. All of these subjects are relevant to Defendants' standing defense, including the question of what trademark rights Plaintiffs do and do not possess, whether Plaintiffs and/or the other "De Beers" entities sought to minimize exposure to U.S. jurisdiction (and thus their rights before a U.S. court), whether Plaintiffs' rights were illusory by design, whether DBCM intentionally misled its joint venture partner, LVMH, and whether Plaintiffs misled the USPTO as to the reasons why it would not apply for a registration in diamonds.

Furthermore, the above subjects are also relevant to various legal doctrines upon which Plaintiffs seek to rely in this case, including the "related goods," "priority date," and "famous marks" doctrines. The New York District Court has already made clear that these are issues for

- 7 -

trial. *See De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc.*, No. 04 CV 4099, 2005 WL 3593544, at *1-2 (S.D.N.Y. Dec. 29, 2005) (related goods doctrine "is a question of fact to be decided at trial" and whether Plaintiffs perpetrated a fraud on the PTO "is partly a question of fact" for trial).

Accordingly, the objection to the production of the Bain documents on the grounds of relevance is unfounded.

B.    The Bain Documents Are Not Shielded By Attorney-Client Privilege.

The attorney-client privilege protects communications made in confidence by a client to his lawyer for the purposes of obtaining legal advice. *See United States v. Kovel*, 296 F.2d 918, 921-22 (2d Cir. 1961). On its face, Bain's assertion of the privilege fails this test because it relates not to legal advice it received from *its* lawyers, but rather to advice given by De Beers' attorneys that was subsequently revealed to Bain. Because "disclosing attorney-client communications to a third party undermines the privilege," the documents and information Bain has obtained from DBCM is discoverable, and should be produced in unredacted form. *See Cavallaro v. United States*, 284 F.3d 236, 246-47 (1st Cir. 2002) (adopting *Kovel* test).

It is well-settled that the privilege may be expanded to include communications to consultants only "where the purpose of the communication is to assist the attorney in rendering advice to the client." *United States v. Adlman*, 68 F.3d 1495, 1499 (2d Cir. 1995). Thus, in resisting the production of documents, "it is crucial that the party asserting the privilege show that the communication is made so that the client may obtain *legal* advice *from her attorney*." *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, No. 02 Civ. 7955, 2003 WL 21998674, at *3

- 8 -

(S.D.N.Y. Aug. 25, 2003) (Cote, J.).[7]  In *Haugh*, Judge Cote remarked that, given this stringent requirement, "it is not surprising that there is limited precedent dealing specifically with the application of the attorney-client privilege to public relations consultants." *Id*.  This principle applies with equal force to the instant case, as presumably few litigants have claimed that the privilege applies to a situation involving a "business consulting firm" such as Bain.  Courts widely agree, however, that if the communication comes from a consultant during the course of rendering business advice, no privilege exists. *See Cavallaro*, 284 F.3d at 247 (holding that if "what is sought is not legal advice but only accounting service . . . , or if the advice sought is the accountant's rather than the lawyer's, no privilege exists"); *Adlman*, 68 F.3d at 1499-1500 (memoranda to client prepared by "business advisor" on tax implications of proposed corporate restructuring were not protected by attorney-client privilege).

For example, in *Cavallaro*, 284 F.3d at 247-49, the First Circuit held that documents created by or provided to an accounting firm not hired for the purpose of assisting lawyers in providing legal advice to a client were not protected by the attorney-client privilege.  The court found that the party asserting the privilege failed to show that its accountant "acted as an agent necessary to the lawyer in providing legal advice," and noted that the "involvement of the third-party must be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications." *See id*. at 249.  Similarly, in this case, Bain was retained by De Beers to give branding and marketing advice and to formulate a business plan, not for purposes of obtaining legal advice.  As De Beers itself describes the arrangement, Bain was "working for De Beers" to develop and assess "options for the structure and management of the Rapids joint

---

[7] Bain bears the burden of establishing that the attorney-client privilege exists in this case. *See, e.g.*, *Cavallaro*, 284 F.3d at 246.

venture." *See* Shafritz Decl. at **Exhibit K**. It is hardly surprising, then, that De Beers has failed

to "identif[y] any legal advice that required the assistance of" its business consultant. *See*

*Haugh*, 2003 WL 21998674, at *3. Accordingly, Bain's documents are not protected from

disclosure by the attorney-client privilege.

Moreover, because Bain is not an entity included within the attorney-client privilege, De

Beers has waived the privilege as to any legal advice it chose to share with its outside consultant.

*See United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997) (holding that

disclosure of attorney-client communications to third party "outside th[e] magic circle" waived

the privilege); *Occidental Chem. Corp. v. OHM Remediation Servs. Corp.*, 175 F.R.D. 431, 437-

38 (W.D.N.Y. 1997) (documents containing legal opinions and strategic considerations

stemming from counsel which were disclosed to design consultant who was not "hired to assist

in the rendition of legal services" were not protected by the attorney-client privilege).

In its correspondence with defense counsel, De Beers has suggested that the Bain

documents are covered by the privilege (and that no waiver has occurred) under *In re Bieter Co.*,

16 F.3d 929 (8th Cir. 1994), because Bain was part of De Beers' "working group of internal

personnel and outside consultants [created] to assist in the development and assessment of

various options for the structure and management of the Rapids joint venture." *See* Shafritz

Decl. at **Exhibit K**. However, De Beers' reliance on the *Bieter* "functional equivalent" doctrine,

which has not been recognized by the First Circuit Court of Appeals, is misplaced.

In *Bieter*, 16 F.3d at 938-40, the court held that communications to a client's lawyer by a

person who acted as the *de facto* principal of a limited purpose corporation, and whom the court

found was the "functional equivalent" of the client's employee, may be protected by the

attorney-client privilege. Such a situation does not exist in this case, where, as De Beers

- 10 -

concedes, it chose to reveal the legal advice provided by its lawyers to its entire "working group" in order "to facilitate the work that was being done by Bain and others working for De Beers."[8] *See* Shafritz Decl. at **Exhibit K**. To apply the attorney-client privilege in this case "would represent a tremendous expansion of the privilege" beyond the functional equivalent of a corporate employee "to any individual contractually associated with a corporation on a full-time basis for some period of time," which courts have refused to do. *See Miramar Constr. Co. v. Home Depot, Inc.*, 167 F. Supp. 2d 182, 185 (D.P.R. 2001); *see also In re Currency Conversion Fee Antitrust Litig.*, No. MDL 1409, M 21-95, 2003 WL 22389169, at *2 (S.D.N.Y. Oct. 21, 2003) (rejecting efforts to shield information given to consultant whose role was "akin to that of an accountant or other ordinary third party specialist, disclosure to whom destroys the attorney-client privilege"). In short, each member of De Beers' "working group," including Bain, JWT and Rothschilds, is not the "functional equivalent" of a De Beers corporate employee; therefore, the *Bieter* case (assuming that it even applies in this Circuit) is easily distinguished. No attorney-client privilege exists to protect the Bain documents from disclosure under the Subpoena.

        C.      The Bain Documents Are Not Attorney Work Product.

The claim that Bain's documents are protected as attorney work product also fails.

> The work-product doctrine, codified for the federal courts in Fed. R. Civ. P. 26(b)(3), is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy "with an eye toward litigation," free from unnecessary intrusion by his adversaries. Analysis of one's case "in anticipation of litigation" is a classic example of work product . . . .

---

[8] The "working group" also included the advertising agency J. Walter Thompson Company ("JWT") and the investment banking and financial services firm N. M. Rothschild & Sons ("Rothschilds").

*United States v. Adlman*, 134 F.3d 1194, 1196-97 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947) and *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975)); *see also Tilberg v. Next Mgmt. Co.*, No. 04 Civ 7373, 2005 WL 3543701, at *1 (S.D.N.Y. Dec. 28, 2005) ("Obviously the classic work product document is a letter or memorandum prepared by the [client's] attorney.").

The attorney work product doctrine exempts from production only those documents prepared in anticipation of "existing or expected litigation." *See State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 67 (1st Cir. 2002). In order to qualify for protection, a document must be "said to have been prepared or obtained *because of* the prospect of litigation." *Id*. at 68. It is well-settled that "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation" are not protected from disclosure. *Id*. at 70. Accordingly, "a party seeking to assert that materials were prepared in 'anticipation of litigation' must state with some specificity which litigation was anticipated, and what nexus exists between the anticipated litigation and the contents of the materials in question or the motivation for their creation." *In re Grand Jury Subpoena*, 220 F.R.D. 130, 146 (D. Mass. 2004). Bain has not, and indeed cannot, meet this burden.[9]

---

[9] "The party seeking work product protection has the burden of establishing its applicability." *In re Grand Jury Subpoena*, 220 F.R.D. at 140. In this regard, Bain's privilege log is woefully inadequate and insufficient to support its work product claim. Under First Circuit precedent, the party invoking the work product doctrine must, at a minimum, "identify the litigation for which the document was created (either by name or through factual description) and explain why the work-product privilege applies to [the relevant] portions of the document." *See Church of Scientology Int'l v. U.S. Dep't of Justice*, 30 F.3d 224, 237 (1st Cir. 1994); *see also In re Grand Jury Subpoena*, 220 F.R.D. at 146 (applying *Church of Scientology* outside FOIA context). In this case, Bain's privilege log merely asserts that documents sent from Bain to De Beers contain "legal advice" regarding various issues; it neither identifies the specific litigation for which the document was created nor explains the nexus between the contents of the documents and the anticipated litigation. *See* Shafritz Decl. at **Exhibit G**.

DBCM identifies two litigations that it claims it anticipated (in 1999) would stem from the joint venture (created in 2001), for which Bain's materials were purportedly prepared:[10] (1) investigation of the joint venture agreement by the European Commission, and (2) "the possibility of U.S. plaintiffs targeting the Rapids joint venture in their suits against De Beers." *See* Shafritz Decl. at **Exhibit K**. However, neither of these possibilities is sufficient to satisfy the doctrine's "anticipation of existing or expected litigation" standard.

An uncommenced investigation by a governmental or regulatory authority does not constitute a "litigation" for purposes of the work product doctrine. *See, e.g.*, *In re Grand Jury Subpoena*, 220 F.R.D. at 146 ("The Court has found no authority suggesting that a government investigation itself constitutes litigation."). Similarly, the possibility that the joint venture would be the topic of future litigation against De Beers in the United States, which De Beers would want to avoid, is simply too vague and remote to meet the "anticipation" requirement. *See id.* at 147-48; *In re Grand Jury Proceedings*, No. M-11-189, 2001 WL 1167497, at *15-16 (S.D.N.Y. Oct. 3, 2001) ("[T]o find that 'avoidance of litigation' without more constitutes 'in anticipation of litigation' would 'represent an insurmountable barrier to normal discovery' and could subsume all compliance activities by a company as protected from discovery.") (citing *In re William L. Derienzo*, 96 Civ. 01186, 1998 WL 283201, at *5 (Bankr. M.D. Pa. April 28, 1998) (noting that to say that all actions taken by a party "were done in an effort to comply with the law to avoid litigation is, at best, convenient")).[11]

---

[10] We note that the documents containing redacted pages are labeled as "Attorney-Client Privileged," but not as "Attorney Work Product." This designation appears to have been made by Bain when it created the documents in 1999. *See* Shafritz Decl. ¶ 12.

[11] Further, contrary to the suggestion of De Beers' counsel in his December 13 letter, such activity is not what occurred in the *Leider* action pending in the Southern District of New York, to which the joint venture is neither a party nor even the subject of Plaintiffs' complaint. *See Leider v. Ralfe*, 387

Moreover, even if one of these two "litigations" were sufficient, the case law makes clear that it is not enough merely to identify a possible litigation; rather, in order to qualify as work product, Bain's documents also must have been "prepared or obtained *because of* the prospect of litigation." *See State of Maine*, 298 F.3d at 67-68. As the First Circuit has established, the "mere relation of documents to litigation does not automatically endow those documents with privileged status." *Id*. at 69. Rather, it is the asserting party's burden to demonstrate that the documents – essentially PowerPoint slides and other business presentation materials – were not "prepared in the ordinary course of business," and that, but for the litigation, they would not exist or would have been created in a very different form. *See id*. at 70.

As this Court has previously held, where litigation is not imminent, to satisfy the "because of" standard, "the primary motivating purpose behind the creation of the document [must be] to aid in possible future litigation." *In re Lernout & Hauspie Sec. Litig.*, 222 F.R.D. 29, 37 (D. Mass. 2004) (finding that attorney e-mails generated "in the ordinary course of business and [that] would have been created in the same form regardless of any possible future litigation" were not protected by the work product doctrine); *see also In re Grand Jury Subpoena*, 220 F.R.D. at 148 (adopting same test). Neither Bain nor De Beers has identified any litigation that was imminent in 1999 when the documents were created. Nor do they assert that the "primary motivating purpose behind" the creation of Bain's business plans was "to aid in possible future litigation." To the contrary, De Beers concedes that Bain was engaged to develop and assess "various options for the structure and management of the Rapids joint venture." *See* Shafritz Decl. at **Exhibit K**. As would be expected, Bain, a business consulting firm, "was not involved

---

F. Supp. 2d 283, 286-87 (S.D.N.Y. 2005); *Leider v. Ralfe*, No. 01 Civ. 3137, 2003 WL 22339305, at *1-2 (S.D.N.Y. Oct. 10, 2003).

in giving legal advice or in mapping litigation strategy in any individual case," and its documents

serve various "business planning functions" for De Beers, but do not "enhance[] the defense of

any particular lawsuit." *See Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987)

(while a "business corporation may engage in business planning on many fronts, among them

litigation," it cannot be said that the "business planning documents" created by its risk

management department were prepared "in anticipation of litigation").

Under such circumstances, Bain can hardly refute the conclusion that its Project Rapids

documents were "prepared in the ordinary course of business," and would "have been created in

essentially similar form irrespective of" any possible litigation that now can be suggested by De

Beers. *See State of Maine*, 298 F.3d at 70.  Nor can Bain credibly argue that the primary purpose

of the documents was "to aid in possible future litigation," rather than to present business and

marketing advice. *See In re Lernout & Hauspie Sec. Litig.*, 222 F.R.D. at 37.  Thus, the

documents at issue do not constitute work product and they must be fully disclosed.[12]

IV.    CONCLUSION.

Defendants are entitled to these relevant documents they seek from Bain under the

Subpoena.  The attorney-client privilege does not apply to such documents created by Bain

during the course of its consulting work for De Beers, and any protection for the legal advice De

---

[12] De Beers' observation that where a document is actually created because of anticipated litigation and analyzes the outcome of that litigation, it "does not lose work-product protection merely because it is intended to assist in the making of a business decision influenced by the likely outcome of the anticipated litigation" does not aid its cause. *See Adlman*, 134 F.3d at 1195 (holding that "a study prepared for an attorney assessing the likely result of an expected litigation" was protected as work product); Shafritz Decl. at **Exhibit K**.  As demonstrated above, such facts are not present here.  Rather, Bain's documents are business presentation materials that were prepared in the ordinary course of business.  As the Second Circuit made clear in *Adlman*, 134 F.3d at 1202, such documents are not protected, even if they might also help in preparation for litigation, "because it could not fairly be said that they were created 'because of' actual or impending litigation."

- 15 -

Beers chose to share with Bain has been waived.  Further, the documents do not qualify as work product, as they were undeniably created in the ordinary course of business and not because of the prospect of a specific litigation.

For the foregoing reasons, Defendants respectfully request that this Court grant their motion for an order compelling Bain to produce the withheld documents in their unredacted form.  In addition, because Bain's refusal to produce the documents is baseless, Defendants ask that they be awarded its reasonable expenses and attorneys' fees incurred in connection with bringing this motion, together with such other legal and equitable relief as this Court deems just and proper.

Respectfully submitted,

DeBEERS DIAMOND SYNDICATE, INC.
and MARVIN ROSENBLATT,

By their attorney,

Michael S. Day, BBO#056247
Mintz, Levin, Cohn, Ferris,
Glovsky and Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000

Dated: January 13, 2006

### Certificate of Service

I hereby certify that I caused a true and accurate copy of the foregoing document to be served upon the attorney of record for each other party by mail on this day, January 13, 2006.

Michael S. Day, BBO# 056247

- 16 -